Good morning, Your Honors. My name is Jim Epstein, and I was also the trial attorney for Dr. Lin at the trial level. I'd like to begin my remarks with talking about what factual findings were made by the trial judge and what the relevance of those findings are to the proceedings before you today. Of course, the judge found at page 211 of the trial transcript that he found that the order by the arranger to my client to go back to his car was lawful. He found that for two reasons. First, he said because there was cars whizzing by and it was a danger to you, the defendant in this case, and also because he did not respond to his original request to do so. It turned into a direction and finally a demand to return to the car, and the judge found under the law that was lawful. So that is no longer an issue before the Court today. It was a major issue at that time because that case was held almost a year before the Williams case came down in the Ninth Circuit that found that an officer does have the right to order a traffic passenger back inside the car. Talked about the minimal discretion to the person of minimum impact. The judge also found, most importantly, at page 211 of his other trial transcript that, in fact, Dr. Lynn was suffering from an asthma attack at the time this occurred. He found that he had an asthma attack in the car, that he unsuccessfully tried to use his inhaler inside the car. It's at page 211. And he was also under mental and physical distress from that attack when he got out of the car. And that is an extremely important finding by the trial judge, a finding of fact in this case. Now, the judge also said that this is a case of credibility and I believe the arranger was under stress, et cetera. And what is the significance of that finding by the judge? Well, there are just a very few areas of conflict between my client and Officer Ranger Greco, and as we'll see, that none of those, even taking Ranger Greco's side, is dispositive of the issue of necessity. The first one, conflict, was Ranger Officer Greco. Ranger Greco testified that my client said to him, when ordered back to the car, you can't tell me what to do. Whereas my client testified, no, I didn't say that. What I said was, I have a right to take my medicine. So there was a conflict there. But again, you find in Ranger Greco's favor, as the judge said, credibility in his favor, all that shows is a reason to find the order lawful. The second prong, that is, his noncompliance with the order led to a second reason why he had a right to order him back to the car, has got nothing to do with the issue of necessity. The second conflict, which is the more interesting one, but again has no real issue on the question of necessity, is that Ranger Greco testified that my client came towards him, that he, Ranger Greco, pulled out his pepper spray, pointed at my client, and that my client then reached into his pocket, pulled out a cylindrical object, and said, oh, you have one of those, I have one of these, and started shaking the object. My client said, no, I had the inhaler in my hand from the beginning. When I got out of the car and I was approaching the officer, he testified at the trial that he tried to tell the officer he was having an asthma attack, it's in the transcript. More importantly, Ranger Harrison, who testified at page 86 of the transcript, was paused as a witness, and he testified that when he got to the scene, Officer Greco told him the same thing that my client said, that the suspect, my client, was approaching him with a cylindrical object and that he, Greco, in defense of that, pulled out his pepper spray and pointed at my client. So Ranger ---- One of the things that the Court ---- I'm sorry. Go ahead. Go ahead. My understanding of the defense of necessity, and that's what you're driving at, is that correct? Correct. Is that the defendant proved that he was faced with a choice of two evil and chose the lesser evil, right? Correct. The two evils here was to return to the car or not to? Well, the evil ---- Could he have returned to the car and there used the inhaler? The answer is no, because he testified that he's had asthma his entire life. Yes. He's 67 years old. He has a degree in nuclear medicine. Could he have done it, gone back to the car and used it there? Back inside of his car? Not inside of his car. He stood right beside it. I suppose so, but he was ordered to go back inside his car. The order was to get back in your car, not go back to your car. He didn't go back to the car, did he? He didn't ---- he continued wandering around. That's correct. Okay. The evil ---- I'll get to that. I will cover that point very thoroughly, Your Honor. Okay. So ---- but even if we take Greco's testimony that my client didn't pull out his inhaler until after Greco was pointed at him, it still has no significance on the issue of necessity. The amazing testimony of Greco was when I said to him, well, when my client reached into his pocket, did you think he was going for a weapon? He said, yes. Well, did you pull your weapon? No. Well, why didn't you? Because I thought he was going for his own pepper spray. And that's extraordinary testimony. An officer sees someone reach for his pocket and doesn't pull his weapon because he thinks the other person is going for a pepper spray when he had seen nothing at that point. I mean, that was totally incredible testimony. But again, giving him the benefit of the doubt, it has nothing to do with the issue of necessity. I guess on this record, based on what's in the record, I have somewhat the same question that Judge Duffy does, which is, I don't understand the relevance of walking away from the car for 75 feet, which is what the testimony was, as opposed to, you know, turning, waving, turning around and walking back towards the car. If he were standing next to the car and said, you know, sitting down is really hard on me, I'd have a lot better understanding of the necessity defense. But walking away from the car versus walking back towards the car, I just don't understand how that is in itself necessary. All right. My client testified that there's two reasons why he didn't want to go back inside the car. The most important reason, 90 percent of it was that he needs to be able to stand up and expand his lungs. Exactly. Well, I understand that. 75 feet? Pardon me? 75 feet of lungs? That's an awful big set of lungs. The issue that he's charged with is disobeying the order to go back inside the car. Okay? My claim at the time, and remember, even the judge said he was under physical and emotional stress at this time. This is not being a Monday morning quarterback and saying he should have thought absolutely clearly. He felt that walking around, getting the fresh air, was the best way for him. My only question is, he could have done that by walking around the car, back and forth in a space of, you know, 3 feet that would not have been. That may be true. But that doesn't change the fact that what he's charged with is disobeying the order to get back inside the car. But the necessity defense requires that there not be an option that the person has, and it seems to me that there's an option short of what occurred here that was more responsive or than what he actually did. Well, the option you're talking about is still not obeying the order of the officer. The ranger said get back inside the car. What you're saying is that he didn't do that. I agree he didn't do that. Agreed. No one's talking about why he didn't do it. Right. Okay. What you're saying is he could have disobeyed it but come closer to the order than he did. That may be true. He might have been more persuasive of the necessity defense. I guess that's my only issue. Let me talk about the four prongs. And if you have any other questions, I'll be glad to answer them. The first prong requires that there's two evils, and he chooses a lesser evil. Obviously, the first evil is violating the order, not obeying the order of an officer. On a scale of 1 to 10, in terms of aggravation, serious offenses, that's certainly very low. Not that it was good to do, but you can't compare it with someone who maybe parked his car in front of a fire. His car is blocking a fire engine getting to a fire. He's ordered to move the car, not to block the fire engine. He says, oh, I got to, you know, and doesn't move it. That's a very low evil on a scale of 1 to 10, and that's important. What are the evils that he was trying to avoid? He was trying to avoid two evils, two harms. One, the present attack he was having at that time. The present symptoms of having an asthma attack that the judge ruled as a matter of fact occur. He was distressed. He was having an attack that was harmful at that time. Plus, the possibility of a much more aggravated situation where he was exacerbated into a much more serious attack, and he's testifying he's actually been hospitalized in the past, and death can occur from that. So there was two harms here. He was presently suffering from asthma attack. The judge ruled so. And I suggest when you weigh those two, clearly the evil he was trying to avoid, his present symptoms, and the possibility of much more serious problems outweighs the evil of simply not obeying an order to get back in a car when there was no real danger to anybody by him being out of the car. The second prong is that he acted to prevent imminent harm. Now, again, he has had asthma all his life. He knows the best way to treat his asthma, and he clearly testified that, in his opinion, the best way is to have been able to stand up fully, expand his lungs, and to get fresh air. Now, Judge Wenger seemed to suggest that there was no imminent danger because it was only a possibility. What he forgets, number one, is there was immediate danger because or harm because he was feeling the effects right then and there from the very beginning of an asthma attack, and that is harm. He was suffering from that. It hadn't yet exacerbated to a more serious harm, but there was definite harm right there. And, again, there was the potential for it to become very serious. He hadn't taken a drag of the inhalation inside the car, as the judge found, based on his testimony and his findings. That did not work, and that made Dr. Lynn more concerned because when the first time the medicine doesn't work, that can lead more likely to a worse condition than if it works the first time. So clearly, there was imminent harm here, twice, the present conditions he was feeling right then and the possibility of much more severe harm if, in fact, it got exacerbated. Judge Wenger said at page 28 of his decision, And then Judge Wenger also goes to quote Lynn's testimony on direct examination. Quote, It was not in real serious trouble. The problem is, and that's at page 174 and 175 of the trial transcript, that answer by my client was in response to a question by me which combined the questioning of Draco and the officers later who questioned him at a later time after he had taken his medicine, describing that at that time later on when he had taken the medicine at that important time, he was feeling better. And if you look carefully at page 174 and 175, it will be very obvious that that question was answering a compound question mainly talking about later on in the situation, not earlier when this alleged crime took place with Officer Draco. The third prong is not even in contention. No one is contending that the third factor, that he believed that his conduct had a causal relationship to what he was trying to avoid, that's pretty clear that he believed that going back to the car would cause a relationship to the harm he was trying to avoid, that is, a more severe attack and getting over the attack he was having at that time. The last prong, that there was no other legal alternative to violating the law. Now, you have to use some kind of common sense to look at this. We have one statute to cover conceivably millions of scenarios where this law might apply. So you have to use some common sense. Again, we're not Monday morning quarterbacks. We have to look at the situation Dr. Lynn found himself in. He's suffering physically and emotionally at the time, as a judge so found. And what Judge Wagner said at page 26, lines 15 through 18 of his decision, he says, well, Dr. Lynn should have disobeyed the order, his words, but at the same time, he should have simultaneously tried to communicate to Draco his predicament. Now, I don't really understand that. He was right to disobey it, but he should have tried at the same time to explain it. Kagan. You have more than used your time. Right. Pardon? You have more than used your time. I have about 30 more seconds if I just make the answer. I have about four minutes into somebody else's time. Four minutes into someone else's time. Okay. Thank you very much. Thank you. Good morning, Your Honor. Stan Bowen on behalf of the United States. One of the central issues in this case that was argued in the brief was the issue of whether specific intent applies to the particular statute or CFR in question here. The second issue which is centering is the necessity. But before I begin the necessity analysis, since that's what we've been talking about this morning, I'd like to point out that the issue of the sufficiency of the evidence as to the charge was not raised nor brought in a motion for new trial or a motion for acquittal by the defense. So in doing that analysis, in the sufficiency of the evidence, we need to take the facts as set forth by the trial court before the trial court as true. Counsel, I know this is really beside the point, but I can't help but express my curiosity why the government even pushed this issue in this particular case. I mean, why — yes, why bring this case? Because — I mean, we see bank robbers and rapists and murderers, and why bring this case? Because this case, you're looking at this case in the context of this court of appeals and thinking, well, in the comparison of looking at bank robbers and stuff, but you have to look at it in the context of Yosemite National Park, where there are hundreds of codes of Federal violations filed for various things, including improper food storage. And you may ask, why are we here on improper food storage? These are CFRs that are promulgated by the Secretary of Interior that are important for management and administration of the national parks. The government sometimes chooses to not bring cases. We cannot look at it in this sterile environment of a court of appeals and say, well, why here when we have these people out here doing these things? You're the local government and the local police and everything is — We are, because it's exclusive jurisdiction. There is no other — no other means by which a case can be brought. It's exclusive jurisdiction within Yosemite itself. So that's why this case is brought. And there are many other cases that are brought that would even be lesser of an extent. But this case is extremely important in terms of management and law enforcement. The issue is, is if the court finds that the defendant is not guilty of offense, then they are acquitted. They are entitled to their day in court. And this defendant did receive his day in court. So I think you have to look at the facts as what occurred in this case as true. And those facts are that the defendant moved towards the officer. The defendant said, I don't have to comply with the order. The defendant, according to the testimony of the ranger, said that they never said, I'm having an asthma attack. There is nothing — there is nothing to suggest by the rangers that that's what the defendant was conveying. There is nothing in the trial memorandum that sets forth in his defense of necessity. There is nothing in the opening statement that sets forth the defense of necessity. And there is nothing in the end other than the fact that he was having an asthma attack that sets forth the defense of necessity. Sotomayor, I take it that if somebody is approaching a police officer, and the police officer tells him to go back to the car or wherever he was told to go back, and he not to be a pepper spray or something like that than an inhaler? I mean, just in the ordinary — trying to get the dynamics of what the police officer was — what the officer was thinking. Well, I think that, again, looking at that by itself, I think you have to look at that I don't have to comply. I'm moving forward. It's in the evening. It's dark. This officer doesn't know anything about what's occurring here. You have to look at it in the full picture. If you had just said that outside of the context, that would be a little odd. That would be odd. I wouldn't. You know, it wouldn't be something that I would say, hmm, I want to take a look at that. But you have to look at it in the entire context of this individual getting out and saying, sir, move to the car. These rangers, and as the record shows, these rangers are EMT-trained. These people save thousands of people every year. They know how to deal. They're not going to be calling people out to the scene if an individual is having an asthma attack. This happens all the time where defendants are drunk. They may be charged, but they're still being serviced by these law enforcement officers. There's two prongs to what they do. That's where the necessity defense, in looking at those facts, that's where the necessity defense fails, and the defendant failed to meet his burden in this case. Additionally, there the defendant testified on cross-examination that he did not have a serious, a real, a serious, a real, real serious situation. That's not the same thing as imminent attack that we are describing here that they're describing here for you today. And that's set forth in our brief that the defendant on cross said these things. That's not to suggest that he had a choice and he chose the lesser of the two evils. That's not the requirement of a necessity defense. I'd like to address very briefly the issue of the specific intent, because that is something that the defendant does focus on in the brief. And while that was not a discussion here today, in that the specific intent for the crime here, while the defendant says, I don't have to, now I'm not arguing that the order was lawful and we have to get into that, but there is a roundabout way of doing it by saying you have to have the specific intent. In other words, I have to know that the order is lawful. Well, one, I submit to you, I don't think that's specific intent. I think that analysis is a willfulness analysis, because you have to know. And I think there is no way that that could be properly managed in the context of what this regulation is intended to protect. It's intended to protect law enforcement officers during the course of law enforcement actions, emergency actions, and to deal with their duties in terms of, you know, move here, do this, et cetera. You cannot in any situation explain or any defendant, unless they're an absolute lawyer. If they're a criminal defense lawyer or they're a prosecutor, would know what parameters of the Fourth Amendment. Did he have to intend? He he I think it's a general intent crime. I don't think it there's no I'm not saying it's a strict liability. I think that he had to have heard the order and understood the order and failed to comply. That's a knowingly requirement. That's the mens rea that is associated with that. And that's different than the A2.32a1, which says with the intent to interfere with intentionally interfering. That's what that says. And that's a different analysis than A2, which has no requirement of an intent to disobey. Not everything that's set forth in a regulation, et cetera, requires a mens rea to that action. And that's what the government is contending. It is a knowingly requirement with regard to the State. You're saying that he doesn't have to intend to prevent the officer from doing his job. He just has to know that the officer told him to do something and not do it. And he disobeyed. I mean, I think that it would be absurd to suggest that an officer gives an order and a defendant doesn't hear it, and then we're charging him with criminal liability. I think that would be an absurd result. And that's not what we're arguing. We do have to understand. And I think the evidence is clear that Mr. Lynn did hear, did hear the order and refused to get back in. And that's simply what it came to. He was shaking his fingers, saying, I don't have to comply. Again, it's not consistent with a necessity defense. And even if somehow you apply some sort of specific intent analysis, it's clear that he was affirmative in his actions in saying, I don't have to comply. I think that is even a higher form. But it clearly meets the knowing standard for the sufficiency evidence. And that's the analysis that the defense raises in terms of their sufficiency of the evidence. The evidence is insufficient when you apply the specific intent aspect. And I think that's absolutely incorrect. I think that the issue of necessity is kind of where we've been centering it again today. And I submit to the Court that the Court, we have set forth in our brief ad nauseum as to the basis by which this is not going through the test, et cetera, as to where that is. And I think the record is absolutely clear that this defendant, that was not their contention. That was not their contention of necessity at any point in time where the Court was on any form of notice that this was what it was about. The fact that the judge, that the trial judge says that this is an asthma attack does not equate to some sort of immediate danger. Hundreds of thousands of people have asthma. That is not the basis by which asthma attack, therefore necessity, because then you'd be deciding as a matter of law that asthma attacks equate to some sort of necessity defense. Was this case originally tried in that little magistrate court in Yosemite? Yes, it was, Your Honor. And these cases are what are called CFRs, and they're what are called petty offenses, what we describe in the nomenclature. We don't see them appealed very often to us. No, not no. You do not. You do not see that. That's not your fault for prosecuting. I understand. My job is to defend the decision. But with the CFRs, those are bench trials. Every one of them is a bench trial because they're petty offenses. They're not entitled to trial by jury, which is another aspect of whether or not we give a higher mental state. The defendants cite some immigration cases. Those are dealing with the severity of the penalty in terms of incorporating a mens rea into a offense where it doesn't appear that a mens rea exists.  And in the immigration cases, they were between, I think, 5 and 20 years in terms of the severity. The one they were focusing on in Nguyen was 5 years. That was a result of that penalty, and, therefore, it wasn't appropriate. I thank you for your time. Can I have 15 seconds to respond just to the issue of the intent? You can have 15 seconds, but that's it. If you look at page 193 of the trial transcript, in my argument, I definitely brought up the issue of medical necessity. It was not my main argument, to be clear. I understand. Thank you. Thank you. The case is argued and submitted for decision. We'll hear the next case, United States v. Thomas.
judges: Schroeder, Graber, Duffy